UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION AT LONDON**

| | |
|---|---|
| VICKY L. PHIPPS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Case No. |
| v. ) | 6:18-cv-127-JMH |
| ) | |
| ANDREW SAUL, COMMISSIONER OF ) | **MEMORANDUM OPINION** |
| SOCIAL SECURITY,[1] ) | **AND ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

\*\*\*

Plaintiff, Vicky L. Phipps ("Phipps") brings this matter under 42 U.S.C. § 405(g) seeking judicial review of an administrative decision of the Acting Commissioner of Social Security. [DE 1]. The Court, having reviewed the record and the motions filed by the parties, [DE 10, 12], will **AFFIRM** the Commissioner's decision as no legal error occurred and it is supported by substantial evidence.

### I. STANDARD FOR DETERMINING DISABILITY

Under the Social Security Act, a disability is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

---

[1] Andrew Saul was sworn in as the Commissioner of Social Security on June 17, 2019. Still, Nancy Berryhill was serving as Acting Commissioner of Social Security when this action was filed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Saul is automatically substituted as a party.

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining disability, an Administrative Law Judge ("ALJ") uses a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.*; *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II. PROCEDURAL AND FACTUAL HISTORY

In 2013, Phipps applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and Title XVI of the Social Security Act. [TR 277, 284]. Her application alleged that she had become disabled as of August 14, 2007. [TR 277, 284, 316, 319]. Both of Phipps' application were initially denied. [TR 147]. Phipps was denied again upon reconsideration. [TR 169]. Ms. Phipps then filed a request for a hearing before an Administrative Law Judge ("ALJ"), which took place on July 19, 2016. [TR 60-69]. That hearing was continued

until December 22, 2016. [TR 33-60]. The ALJ, Christine Cooke, rendered a partially favorable decision. [TR 11-32]. The Appeals Council denied review on February 23, 2018. [TR 8-10].

ALJ Cooke found that Phipps was not disabled prior to February 6, 2014, but that she became disabled on that date. [TR 13-24]. The Appeals Council denied review, [TR 1–4], rending the ALJ's decision final under 20 C.F.R. § 404.981. This appeal followed pursuant to 42 U.S.C. § 405(g). Consistent with the Court's Standing Scheduling Order, the parties have submitted cross motions for summary judgment, which are ripe for review. [DE 10, 12].

Phipps alleges onset of disability of August 2007, when she was 41 years of age. [TR 277, 284, 316, 319]. Phipps has a GED, and past relevant work as a gas station manager, a skilled, medium-exertion job. [TR 47-48, 320-21, 332]. Phipps stopped working in 2007 due to her pregnancy. [TR 48-49, 320].

Phipps claims she became disabled in 2007 due to a variety of physical and mental impairments. [TR 48-49, 320]. In particular, she claims that suffers from carpal tunnel syndrome, failed back syndrome, and multiple sclerosis. [TR 41-41, 44].

In January 2014, a lower back x-ray revealed minimal degenerative changes and no spondylosisthesis noted. [TR 1014-15]. However, a lower back MRI study on February 6, 2014 revealed

3

a bulging disc encroaching on the spinal canal and neural foramina. [TR 971-72].

In March 2014, Dr. Joseph Childs, observed that Phipps had an abnormal straight leg raise test. [TR 961]. Phipps then saw Dr. Joel Norman, M.D., complaining of intermittent sciatic pain that worsened the prior year. [TR 966-67]. Upon follow-up, Dr. Norman noted similar findings. [TR 997, 1084].

In May 2014, a state agency doctor, Sudhideb Mukherjee, M.D., evaluated Phipps's physical abilities, concluding that she had the ability to perform light work. [TR 82-82]. He further indicated that Phipps did not meet or medically equal disabling impairment. [Id.]. Those conclusions were independently reviewed by Dr. P. Saranage, M.D., who concurred. [TR 108, 120-123].

In June 2014, Dr. Norman performed low back surgery on Phipps. [TR 1105-07]. Phipps underwent another MRI in August of 2014, which showed post-surgical changes, but did not show any significant disc bulge, spinal canal narrowing, or narrowing or neural foramina. [TR 1178-79]. Dr. Norman opined that nothing in the MRI is consistent with Phipps' pain. [TR 1254]. A follow-up MRI in September 2014 showed no significant changes. [TR 1180-81].

Later that month, Phipps underwent a surgical revision to remove some scar tissues. [TR 1224-25]. She initially reported improvement in her pain. However, later in the year, Phipps

4

continued to report persistent lower back pain, despite that fact that all the objective studies "reveal[ed] no evidence of neurologic compression, [and] stable appearance of the hardware with no complications or malalignment." [TR 1245].

In 2015, Phipps began pain management with Dr. James Choo, M.D. [TR 1235-39]. However, Phipps was able to heel-and-toe walk, and straight leg raise. [TR 1237]. Despite this, Dr. Choo performed several spinal injections. [TR 1202, 1234].

In June 2015, Phipps underwent a lower back CT scan. [TR 1200-1, 1243]. The scan revealed mild narrowing at the neural foramina, but which were noncompressive. [TR 1243].

Phipps treated with two nurse practitioners: Sherri Robertson and Amy Goodin. Goodin observed a normal gait and abnormal leg raise. [1465-66]. Robertson recorded irregular gait, but, like Goodin, recorded abnormal legal raises. [TR 1459, 1462, 1469, 1473, 1477, 1481, 1501, 1506, 1509, 1512].

On December 22, 2016, Ms. Phipps testified at the hearing. Ms. Phipps reports living at home with her husband and eight-year old twins. [TR 47]. She testified that she is capable of driving. [TR 47]. Phipps testified that she gets up in the morning before her daughters, and that they get ready on their own. [TR 53]. She further reports that she sometimes requires them to help her get dressed. [TR 53]. However, on other occasions she helps them dress. [Id.]. Phipps further reports that she can make her

5

children breakfast and does drive them to school. [TR 53]. Phipps will then return home and lay down because of the pain in her back. [TR 53-54].

Phipps admitted that she has never had mental health treatment for anxiety or depression nor was she in the process of seeking such treatment. [TR 51]. She does take Valium. [Id.]

After the hearing and considering all the evidence, the ALJ issued his decision on February 17, 2017. [TR 11-32]. At Step One, the ALJ determined that Phipps has not engaged in substantial gainful activity since the alleged onset date of August 14, 2007. [TR 14-15].

At Step Two, the ALJ found that, since the alleged onset date, Phipps suffered from the following severe impairments: lumbar degenerative disc disease; coagulation disorder; carpal tunnel syndrome status post bilateral release surgery; obstructive sleep apnea; obesity; and history of thrombophilia. [TR 16]. The ALJ also noted isolated complaints of depression and anxiety. [TR 16]. However, Phipps had no history of mental health treatment, medication, or hospitalization. [Id.]. Although, Phipps did go see Timothy Baggs, Psy.D., in February 2014, Dr. Baggs found Phipps had a normal mental status and no signs sufficient to warrant a diagnosis of depression or anxiety. [Id.].

However, at Step Three, the ALJ found that prior to February 6, 2014, Phipps did not have an impairment combination or

6

impairment that met or medically equaled the severity of any of the listed impairments. [TR 17]. In reaching this conclusion, ALJ Cooke found that Phipps had not satisfied the criteria of Listing 1.02, 3.09, 4.02, 7.08, or 12.02. [Id.]

Before proceeding to Step Four, the ALJ found that, prior to February 6, 2014, Phipps had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a); 416.967(a). Specifically, the ALJ found Phipps could perform the following tasks:

> [She] is able to sit for 8 hours out of 8 hours; and she can stand and walk in combination for 2 hour out of 8 hours. Claimant is able to lift, carry, push, or pull negligible weights, such as file or documents, weighing up to 5 pounds frequently and up to and including 10 pounds occasionally. Claimant is able to occasionally push or pull with her right upper extremity but frequently push or pull with her left upper extremity. Claimant is able to frequently push or pull with her right lower extremity. She should never climb ladders, ropes, or scaffolding. Claimant can occasionally climb stairs or ramps; stoop; kneel; crouch; and crawl. Claimant should never engage in hard, repetitive grasping such as would be required to open a sealed jar or to use pliers, with her bilateral hands. Claimant should never be exposed to extreme could; to humidity; to vibration; or to hazards, such as dangerous machinery and unprotected heights.

[TR 17-18].

The ALJ then concluded, at Step Four, that, since August 14, 2007, Phipps has been unable to perform any past relevant work as a gas station manager, because the demands of that job exceed her

7

RFC. [TR 21]. In addition, the ALJ determined that, prior to February 6, 2014, given Phipps's age, education, work experience, and RFC, "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." [TR 22]. ALJ Cooke based her conclusion on testimony from a vocational expert ("VE") that, prior to February 6, 2014, Phipps could have performed the requirements of occupations such as Order Clerk – Food and Beverage (24,536 jobs nationally), Circuit Board Assembler (59,026 jobs nationally), and Document Preparer (45,236 jobs nationally). [TR 22]. Thus, the ALJ determined Plaintiff was not disabled prior to February 6, 2014, but was disabled as of that date. [TR 24].

However, beginning February 6, 2014, the ALJ found that the severity of Phipps's impairments met the criteria of Listing 1.04. [TR 23-24]. In making the finding that Phipps had a listing-level spinal impairment, the ALJ relief primarily on the testimony of a medical expert, Dr. Leonard Rubin, M.D. [Id.]. Dr. Rubin stated that he was familiar with Listing 1.04, and opined that Phipps's degenerative disc disease met the criteria of Listing 1.04C, spinal stenosis resulting in pseudoclaudication as shown by "appropriate medically acceptable imaging." [TR 43]. Dr. Rubin stated the first MRI clearly showing the listing-level impairment was dated on February 2014. [TR 43]. As a result, the ALJ found that, based

on the application for supplemental security income, Phipps was disabled as beginning February 6, 2014. [TR 24].

Phipps's only argument with the ALJ's finding is that she did not properly determine Phipps's onset date. [DE 10 at 2-5, PageID #1673-76]. The Commissioner contends that the ALJ's decision was proper and should be affirmed. [DE 12].

### III. STANDARD OF REVIEW

When reviewing the ALJ's ruling, this Court may not "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). This Court determines only whether the ALJ's ruling is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. We are to affirm the decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## IV. ANALYSIS

Phipps argues that the ALJ erred finding that Phipps's onset date was February 6, 2014. [DE 10 at 2-5, PageID #1673-76]. In particular, Phipps claims that the ALJ's finding violated Social Security Ruling 83-20 ("SSR 83-20"), stating:

> Absent from the ALJ's analysis of the onset date of Ms. Phipps's disability is both her testimony as to symptomology and her work history which the ALJ was required to consider pursuant to SSR 83-20.

[Id. at 4-5, PageID # 1675-76].

The Commissioner argues that Phipps failed to meet her burden of establishing that the date of her disability was prior to February 6, 2014. [DE 12 at 7, PageID #1688]. In support the Commissioner states that Phipps failed to point to any evidence suggesting an earlier onset date. [Id. at 9, PageID #1690]. Specifically, the Commissioner notes that Listing 1.04C must be established by, among other things, medically acceptable imaging, [id.], and Phipps has failed to show any imaging earlier than February 6, 2014 that would establish lumber spinal stenosis. [Id.]. The Commissioner further argues that, despite Phipps's claims, the ALJ considered Phipps's symptomology, testimony, and work history. [Id. at 10-11, PageID #1691-92]. The Commissioner is correct.

A claimant who meets the requirements of a Listed Impairment will be deemed disabled under the Act. In order to meet or equal

the requirements of a listed impairment, a claimant must demonstrate specific findings that duplicate the enumerated criteria of the listed impairment. However, the claimant's condition must manifest *all* of the specified medical criteria for such impairment. *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) ("An impairment that manifests only some of the criteria, no matter how severe, does not qualify.") (emphasis added). This equivalency must be based on medical evidence supported by acceptable clinical and diagnostic techniques. *Land v. Sec'y of Health and Human Services,* 814 F.2d 241, 245 (6th Cir. 1986).

Listing 1.04, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, generally refers to Disorders of the Spine. As the Commissioner correctly notes, [DE 12 at 8, PageID #1689], Listing 1.04C refers to lumbar spinal stenosis that requires objective diagnostic imaging and medical documentation of certain specified physical limitations. In particular, Listing 1.04C provides:

> Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, supt. P, App. 1 § 1.04.

In the instant action, the ALJ found Phipps met the requirements of Listing 1.04C. [TR 23-24]. Dr. Rubin testified

that Phipps had an MRI from February 6, 2014, showing a disc dessication involving L3-S1 with degenerative disc changes as was as significant hypertrophy. [TR 23, 1013-14, 1174-75]. Moreover, the report of that MRI indicates significant spinal stenosis and bilateral neural foraminal stenosis between L3-4. [Id.]. A report from the following month documented complaints of bilateral leg pain. [TR 23, 997-998].

Dr. Childs's examination of Phipps on March 1, 2014 further revealed significant lower extremity pain, numbness, and spasms, which Dr. Childs stated was likely related to Phipps' degenerative back problems. [TR 23, 961]. A report from the following month indicated that Phipps was symptomatic of, among other things, lumbar stenosis. [TR 23, 997-98].

Phipps underwent laminectomy and L4-5 fusion surgery on May 19, 2014. [TR 23, 1108-60, 1226-28]. An August MRI, ordered as a result of Phipps's complaint of right leg pain following her lumbar fusion surgery revealed enhanced fluid in the surgical bed, resulting in a mild mass effect on the thecal sac and extending to the right L4-5 neural foramen. [TR 23].

Phipps had an additional exploratory surgery on September 26, 2014, to remove scar tissue. [TR 23, 1186]. The report indicates Phipps's symptoms were almost the same before the surgery after initial improvement. [Id.]. Dr. Rubin referenced the report,

12

noting that Phipps still reported lower extremity pain in her right leg. [TR 23-24, 1229].

Additionally, Dr. Rubin noted in January 2015, Phipps began receiving epidural steroid injections to alleviate continued pain. [TR 24]. In April 2015, a report indicates Phipps was to begin a trial spinal cord stimulator. [TR 24, 1197]. A June 2015 MRI revealed postoperative changes at L4-L5, including right foraminal stenosis. [TR 24, 1099]. A report from June 2016, indicates weakness and numbness in Phipps's legs and positive straight leg raising. [TR 24, 1462].

As a result of this medical evidence, Dr. Rubin opined that Phipps's impairment meets Listing 1.04C. [TR 24]. As a result, the ALJ determined that Phipps was, indeed, disabled. [TR 24].

Once a finding of disability is made, the ALJ must determine the onset date of the disability. *See Key v. Callahan,* 109 F.3d 270, 274 (6th Cir.1997) ("Since there was no finding that the claimant is disabled as a result of his mental impairment or any other impairments or combination thereof, no inquiry into onset date is required."); *See also Seeley v. Comm'r of Soc. Sec.,* 2015 WL 305322, at *5 (6th Cir. Jan. 23, 2015); *Key v. Callahan,* 109 F.3d 270, 274 (6th Cir. 1997).

Phipps argues that the ALJ improperly set the onset date of Phipps's disability. In cases contesting the onset date of disability, the issue is whether there is substantial evidence in

the record to support the ALJ's findings of when a claimant's disability began. *Willbanks v. Secretary of Heath & Human Servs.,* 847 F.2d 301, 303 (6th Cir. 1988) (per curiam). The claimant must prove that he became disabled prior to the date selected. *Foster v. Bowen,* 853 F.2d 483, 489 (6th Cir. 1988). Thus, in the instant case, although the Commissioner is not required to present evidence that would eliminate a possible onset date any time prior to February 6, 2014, the Commissioner is required to establish by substantial evidence that the disability began February 6, 2014. *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (Sixth Cir. 1989) (citing *Willbanks,* 847 F.2d at 303).

In the instant case, Phipps argues that the ALJ did not consider her testimony as to symptomology and her work history which the ALJ was required to consider pursuant to SSR 83-20. [Id. at 4-5, PageID # 1675-76]. Here, Phipps alleged onset of disability of August 2007, when she was 41 years of age. [TR 277, 284, 316, 319]. Phipps has a GED, and past relevant work as a gas station manager, a skilled, medium-exertion job. [TR 47-48, 320-21, 332]. Phipps stopped working in 2007 due to her pregnancy. [TR 48-49, 320].

SSR 83-20 governs the determination of disability onset date. In particular, SSR 83-20 describes the evidence relevant to establishing a disability onset date. The ruling states, in relevant part:

14

> Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset *only if it is consistent with the severity of the condition(s) shown by the medical evidence.*

SSR 83-20 at 1 (emphasis added).

The Court finds that the ALJ acted properly and in conformity with SSR 83-20 in setting February 6, 2014 as the onset date. [TR 24]. It is true, when a claimant suffers from a chronic and long-standing condition, medical findings and conditions subsequent to the onset of disability are probative of the medical condition existing prior to that time. *See Ellis v. Schweicker,* 739 F.2d 245, 247 (6th Cir. 1984). Thus, it is improper to base a decision on one single piece of evidence and to disregard other pertinent evidence. *Hephner v. Matthews,* 574 F.2d 359, 362 (6th Cir. 1978). And in the case of slowly progressing impairments, it is not necessary for a claimant to establish a listed severity before onset can be established. *Blankenship v. Bowen,* 874 F.2d 1116, 1122 (6th Cir. 1989).

However, the Ruling provides that "the medical evidence serves as the primary element in the onset determination." SSR 83-20 at 2. While the Ruling allows for lay evidence to be consulted, it states that "the established onset date must be fixed on the

15

facts and can never be inconsistent with the medical evidence of record." SSR 83-20 p. 4. The Ruling further states that "the impact of lay evidence on the decision on onset will be limited to the degree it is not contrary to the medical evidence of record." *Id.*

Phipps relies on *Wilbanks* in support of her claim of an earlier onset date. [DE 10-1 at 4, PageID #1675]. In *Willbanks v. Secretary of Health and Human Services,* 847 F.2d 301 (6th Cir. 1988), the plaintiff first sought treatment for mental problems in June of 1982 but alleged a disability onset date of January, 1976. The administration found a June, 1982 onset date and the claimant appealed, arguing that SSR 83-20 had not been properly followed. *Willbanks,* 847 F.2d at 303.

The Sixth Circuit reversed the administrative decision and made a finding that the overall evidence of record supported a January, 1976 onset date. *Id.* In particular, the court cited the plaintiff's testimony, the testimony of his mother, and the opinions of a medical expert and a treating mental health professional as evidence supporting the earlier onset date. *Willbanks,* 847 F.2d at 302. Significantly, both the medical expert and the treating source opined that the claimant's mental problems "related back" to the earlier time frame despite the lack of treatment during this time period. *Id.*

*Willbanks* is significantly different from the instant case. Here, the ALJ acted properly and in conformity with SSR 83-20 in setting February 6, 2014 as the onset date. [TR 24]. Listing 1.04C expressly requires lumbar stenosis to be established by, among other things, findings on appropriate medically acceptable imaging. 20 C.F.R. pt. 404, supt. P, App. 1 § 1.04. The ALJ noted that there was no objective diagnostic imaging showing a listing level severity prior to February 6, 2014. [TR 24]. Dr. Rubin opined that the medical evidence indicates both persistent pain that results in claudication. [TR 24]. However, he also noted that, while there were multiple MRIs in the record, the first one that clearly shows listing-level severity is dated February 6, 2014. [TR 24].

Phipps points to no medical sources opining that onset date of her listing-level was prior to February 6, 2014, much less points to MRIs reflecting the required objective diagnostic imagining prior to the onset date set by the ALJ. Notably, in January 2014, a lower back x-ray revealed minimal degenerative changes and no spondylosisthesis noted. [TR 1014-15].

Instead, Phipps states only that the ALJ did not consider her testimony and subjective complaints and work history in establishing the onset date. [DE 10-1 at 4, pageID 1675]. Of course, the burden is on the Phipps to establish an earlier onset date. *Foster*, 853 F.2d at 489. Yet, Phipps does elaborate as to

17

what evidence in her testimony, subjective complaints, and work history establish an earlier onset date. [Id.]. We note that "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *Vasquez v. Astrue*, No. 6:12-CV-125-KSF, 2013 WL 1498895, at *6 (E.D. Ky. Apr. 11, 2013) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ); *see also Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). We find that Phipps has failed to meet her burden of establishing an earlier date. *See Foster*, 853 F.2d at 489

Instead, we find the February 6, 2014 date established by substantial evidence. SSR 83-20 provides that "the medical evidence serves as the primary element in the onset determination." SSR 83-20 at 2. While lay evidence may be consulted, it states that "the established onset date must be fixed on the facts and can never be inconsistent with the medical evidence of record." SSR 83-20 p. 4. Here, the medical evidence does not contain any objective diagnostic imaging prior to February 6, 2014, indicating an earlier onset date. As a result, the undersigned must conclude that the ALJ properly determined that Phipps's back problems became disabling as of February 6, 2014, and not at an earlier time period.

## V. CONCLUSION

The Court, having found no legal error on the part of the ALJ and that his decision is supported by substantial evidence, the Acting Commissioner's final decision is **AFFIRMED**.

Accordingly, it is hereby **ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment [DE 10] is **DENIED**;

(2) Defendant's Motion for Summary Judgment [DE 12] is **GRANTED**;

(3) Judgment in favor of the Defendant will be entered contemporaneously herewith.

This the 24th day of September, 2019.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge